Bree Hann (Utah Bar No. 16685)
Fred Norton (CA SBN 215695 (admitted *pro hac vice*)
Nathan Walker (CA SBN 206128 (admitted *pro hac vice*)
THE NORTON LAW FIRM PC
10721 S. Trailridge Cir.
Sandy, UT 84092
and
299 Third Street, Suite 200
Oakland, CA 94607
(510) 906-4900
bhann@nortonlaw.com
fnorton@nortonlaw.com
nwalker@nortonlaw.com

*Attorneys for Defendant Coinbase, Inc.*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| MITCHELL EDWARDS,<br><br>*Plaintiff,*<br><br>v.<br><br>AT&T, INC.; AT&T MOBILITY, LLC; COINBASE GLOBAL, INC.; AND COINBASE, INC.,<br><br>*Defendant.* | **DEFENDANT COINBASE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO STAY CLAIMS UNDER THE FEDERAL ARBITRATION ACT**<br><br>Case No. 2:21-CV-00342-BSJ<br><br>Honorable Judge Bruce S. Jenkins<br><br>**ORAL ARGUMENT REQUESTED** |

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. THE COURT SHOULD GRANT THE MOTION. ............................................................ 1

    A. The Parties Have A Valid, Enforceable Arbitration Agreement. ........................... 1

        1. Clickwrap Agreements Are Enforceable. ..................................................... 1

        2. Coinbase Showed Edwards Was Presented With And Accepted The 2013 Terms. ..................................................................................... 3

    B. The Parties' Agreement Reserves Arbitrability For The Arbitrator. ...................... 6

    C. The Broad Arbitration Clause Covers Edwards's Claims. .................................... 7

    D. Edwards's Claims Against Coinbase In This Court Should Be Stayed Pending The Completion Of Edwards's Individual Arbitration. .......................... 10

III. CONCLUSION.......................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Am. Exp. Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ................................................................................................................ 7

*Belnap v. Iasis Healthcare*,
  844 F.3d 1272 (10th Cir. 2017) .............................................................................................. 6

*Bennett v. Sprint Nextel Corp.*,
  2013 WL 1197124 (D. Kan. Mar. 25, 2013) .......................................................................... 5

*Brown v. Coleman Co.*,
  220 F.3d 1180 (10th Cir. 2000) .............................................................................................. 8

*Cal Wadsworth Const. v. City of St. George*,
  898 P.2d 1372 (Utah 1995) ..................................................................................................... 2

*Com. Union Assocs. v. Clayton*,
  863 P.2d 29 (Utah Ct. App. 1993) .......................................................................................... 2

*E.E.O.C. v. Creative Networks, LLC*,
  2008 WL 5225807 (D. Ariz. Dec. 15, 2008) .......................................................................... 5

*Earth Island Inst. v. Nash*,
  2020 WL 1936701 (E.D. Cal. Apr. 21, 2020) ........................................................................ 5

*Feldman v. Google, Inc.*,
  513 F.Supp.2d 229 (E.D. Pa. 2007) ........................................................................................ 2

*Getzelman v. Trustwave Holdings, Inc.*,
  2014 WL 3809736 (D. Colo. Aug. 1, 2014) ........................................................................... 6

*Gregory v. Electro-Mechanical Corp.*,
  83 F.3d 382 (11th Cir. 1996) ............................................................................................. 8, 9

*Greiner v. Credit Acceptance Corp.*,
  2017 WL 586727 (D. Kan. Feb. 13, 2017) ........................................................................... 10

*Hancock v. Am. Tel. & Tel. Co.*,
  701 F.3d 1248 (10th Cir. 2012) .............................................................................................. 2

*Hines v. Overstock.com, Inc.*,
  380 F. App'x 22 (2d Cir. 2010) .............................................................................................. 2

*John Call Eng'g, Inc. v. Manti City Corp.*,
  743 P.2d 1205 (Utah 1987) ..................................................................................................... 2

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
  174 F.3d 907 (7th Cir.1999) ................................................................................................... 9

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
  252 F.3d 218 (2d Cir.2001) .................................................................................................... 8

*Mitchell v. Wells Fargo Bank*,
  280 F. Supp. 3d 1261 (D. Utah 2017) .................................................................................. 10

*P & P Indus., Inc. v. Sutter Corp.*,
  179 F.3d 861 (10th Cir.1999) ................................................................................................ 8

*Sanchez v. Nitro-Lift Techs., LLC*,
  762 F.3d 1139 (10th Cir. 2014) .................................................................................... 7, 8, 9

*Spahr v. Secco*,
  330 F.3d 1266 (10th Cir. 2003) ........................................................................................... 10

*Stevens v. Water Dist. One of Johnson Cty.*,
  561 F. Supp. 2d 1224 (D. Kan. 2008) .................................................................................... 5

*Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*,
  1 F.3d 639 (7th Cir.1993) ...................................................................................................... 8

*Vakas v. Transamerica Occidental Life Ins. Co.*,
  242 F.R.D. 589 (D. Kan. 2006) ............................................................................................. 5

**Statutes**

9 U.S.C. § 2 ................................................................................................................................... 7

**Rules**

Fed. Rule. Civ. Pro. 26 .................................................................................................................. 4

Fed. Rule of Evid. 704 .................................................................................................................. 5

Fed. Rule of Evid. 701 and 702 .................................................................................................... 3

**I.    INTRODUCTION**

On this motion to compel arbitration, there is no dispute Defendant Coinbase, Inc. provides its services to users exclusively under the terms of a Coinbase User Agreement. There is no dispute the User Agreement in place when Plaintiff Mitchell Edwards created his Coinbase account in 2013, and when he re-accepted the terms in 2014, included a broad arbitration clause. And there is no dispute Edwards actually agreed to both the 2013 and 2014 versions of the User Agreement.

In its motion, Coinbase presented evidence that Edwards was shown the full text of the 2013 User Agreement when creating his Coinbase account. That User Agreement included an arbitration clause. Edwards has not submitted evidence showing he was not presented with the full text of the 2013 User Agreement. In fact, he has presented no contrary evidence at all. As Edwards concedes in his Opposition, Coinbase need only show it is "more likely than not" that he accepted the agreement with its arbitration clause. Coinbase has done so.

The parties agreed to arbitrate disputes arising under the User Agreement, and Edwards's allegations that Coinbase negligently provided its services – services Coinbase provided under the User Agreement – qualify as such a dispute. The motion to compel arbitration and to meanwhile stay these proceedings should be granted.

**II.    THE COURT SHOULD GRANT THE MOTION.**

    **A. The Parties Have A Valid, Enforceable Arbitration Agreement.**

        **1.    Clickwrap Agreements Are Enforceable.**

In his Opposition, Edwards asserts the Court should apply Utah law to determine if clickwrap agreements are enforceable. *See* Opp., Dkt. 45, at 6-7. While the parties' agreement specified Delaware law as governing law, applying Utah law does not change the outcome. The Opposition does not contend clickwrap agreements are, or likely would be found to be,

1

unenforceable under Utah law. *See id.* at 8-9. And while the Utah Supreme Court may not have yet expressly addressed the question, clickwrap agreements are "increasingly common and 'have routinely been upheld.'" *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1256 (10th Cir. 2012) (internal citations omitted). Courts in other jurisdictions recognize contract formation principles remain the same whether the parties agree online or in hard copy, and enforce clickwrap agreements where these basic tenets are satisfied. *See, e.g.*, *Feldman v. Google, Inc.*, 513 F.Supp.2d 229, 237-38 (E.D. Pa. 2007) (enforcing a clickwrap agreement after applying "traditional principles of contract law and focus[ing] on whether the plaintiffs had reasonable notice of and manifested assent to the clickwrap agreement"); *cf. Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24-25 (2d Cir. 2010) (regarding a 'browsewrap' agreement, "binding contracts are made when the user takes some action demonstrating [] at least constructive knowledge of the terms of the agreement . . . We predict the Utah courts would come to a similar conclusion.").

For contract formation generally, Utah law requires the parties mutually assent to the agreement's material terms. *See, e.g.*, *Cal Wadsworth Const. v. City of St. George*, 898 P.2d 1372, 1376 (Utah 1995); *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1207 (Utah 1987). Further, even if a party has not formally signed an agreement, it can manifest mutual assent through other conduct. *See, e.g.*, *Com. Union Assocs. v. Clayton*, 863 P.2d 29, 34-37 (Utah Ct. App. 1993). That is what happened here: in 2013, after Edwards was presented with the full text of the User Agreement on his screen when creating his account, he affirmatively selected the "Accept and Continue" option, indicating his assent to the User Agreement. Declaration of John Granata ("Granata Decl."), Dkt. 43-3, ¶¶ 7-9, Exh. A. Clickwrap agreements requiring such "affirmative action on the part of the user" are exactly the sort that "'have routinely been upheld'" by courts across jurisdictions. *Hancock*, 701 F.3d at 1256.

The Court need not disregard the parties' agreement because Edwards agreed to it online. The parties' agreement is enforceable.

### 2. Coinbase Showed Edwards Was Presented With And Accepted The 2013 Terms.

As Edwards concedes, Coinbase need only show its offer, and Edwards's acceptance, "were more probable than not." Opp. at 10. Coinbase's evidence goes beyond that.

As noted, Coinbase provided evidence showing Edwards accepted the 2013 Agreement, including its arbitration agreement, by selecting "Accept and Continue" beneath the full text of the agreement during the account-creation process in December 2013. *See* Mot., Dkt. 43, at 10; Declaration of McPherson-Evans ("McPherson-Evans Decl."), Dkt. 43-2, ¶¶ 8-9, Exh. A; Granata Decl., Dkt. 43-3, ¶¶ 7-9, Exh. A. Coinbase further provided evidence showing Edwards accepted the 2014 Agreement as well, including its arbitration agreement, in March 2014. *See* Mot. at 10; McPherson-Evans Decl. ¶ 10, Exh. B; Granata Decl., ¶ 10, Exh. B.

To show Edwards accepted the 2013 and 2014 User Agreements, Coinbase provided the McPherson-Evans Declaration and its two exhibits, which are excerpts from Coinbase's user records showing the date and time when Edwards accepted. *See* McPherson-Evans Decl., ¶¶ 8-10, Exh. A, B. Edwards does not object to this evidence, and so his acceptance of the 2013 and 2014 User Agreements is uncontested. *See* Opp. at 11-12, 13-14, 21.

Edwards does object to and moves to strike the Granata Declaration, which he contends suffers from various infirmities. However, none merits striking the declaration.

*The Granata Declaration is admissible.* Edwards asserts the Granata Declaration is inadmissible because (1) it contains testimony based on technical or other specialized knowledge of Coinbase's source code, in violation of Federal Rule of Evidence 701, and (2) therefore Coinbase was required to, but did not, submit a prior "expert report" for Granata. Not so.

3

Granata's testimony, based on his review and technical and specialized knowledge of Coinbase's source code, properly is admissible expert testimony of a party employee, which is expressly outside the scope of Rule 701.  *See* Fed. R. Evid. 701, 702.  Moreover, Coinbase had no obligation to provide an expert report for Granata before submitting his declaration.  Expert reports and disclosures are presumptively due ninety days before trial – and here Edwards filed his complaint only three months ago and the Court has not yet held the initial case management conference, much less set a trial date.  *See* Fed. R. Civ. Pro. 26(a)(2)(D).  Parties routinely file expert declarations early in cases, such as with motions for preliminary injunctions, and long before expert disclosure deadlines.  Further, the duty to provide an "expert report" applies only to witnesses "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."  Fed. R. Civ. Pro. 26(a)(2)(B), (C).  But Granata is neither of these; he is a Coinbase employee, he is not specially retained to provide expert testimony here, and his job does not regularly involve giving expert testimony.  Finally, Edwards has not alleged – much less demonstrated – any prejudice from the lack of an expert report or disclosure.  This is an objection without merit.

***The Granata Declaration provides adequate foundation and detail***.  Edwards complains the Granata Declaration did not lay an adequate foundation, does not include enough specific facts, and does not connect facts to its opinion.  *See* Opp. at 16-18, 20.  Edwards is incorrect.  Granata described his position at Coinbase and how, through that work, he is familiar with how Coinbase stores current and historic versions of source code that implements the process by which customers create Coinbase accounts and accept the Coinbase User Agreement, as well as how to retrieve and interpret that source code.  Granata Decl. ¶¶ 1, 3.  He described how he had reviewed the source code relating to the online account-creation process as it existed on

4

December 24, 2013 (when the undisputed evidence shows Edwards accepted the 2013 User Agreement), and then he described that process, including how, after a user clicked the "Create an Account" button, "[t]he user was then presented with a webpage that *rendered the full text of the User Agreement in effect at that time*." *Id*., ¶¶ 7, 8, 9, Exh. A (emphasis added). Granata further described how Exhibit A – which is the text of the 2013 User Agreement "presented to the user on the signup webpage" as of December 24, 2013 – included "text formatting instructions [] designated by carrots ("<…>") that were used to format the text on [the] webpage." *Id*., ¶ 9. This detail further supports Granata's assertion that the account-creation process presented the user with the full text of the User Agreement, and contradicts Edwards's arguments that Granata's assertion was too conclusory and "ipse dixit." *See also* Fed. R. Evid. 704. As Edwards put it, Granata needed only to show he "had a reasonable opportunity to form an opinion" "through contacts with the subject." Opp. at 17. Granata demonstrated he had that opportunity, by describing his ability to interpret the codebase and what he discerned after reviewing the historic source code. Granata Decl., ¶¶ 1, 3, 7-9.

While Coinbase contends the Granata Declaration is adequate – and, importantly, has not been rebutted with any contrary evidence – Coinbase nonetheless provides a supplemental declaration to address issues raised by Edwards regarding the validity of Granata's original declaration. *See* Supplemental Declaration of John Granata ("Supp. Granata Decl."). There, Granata clarifies the process by which he examined the source code, including clarification about the source-code language, his experience with it, and how the source code confirms that the full text of the User Agreement was rendered to the prospective user during the account-creation

process. *See* Supp. Granata Decl., ¶¶ 3-11.[1]

### B. The Parties' Agreement Reserves Arbitrability For The Arbitrator.

Because the parties delegated arbitrability to the arbitrator, the arbitrator – not the Court – must decide whether Edwards's claims must be arbitrated. *See* Mot. at 2. The parties' agreements here delegate arbitrability by incorporating the American Arbitration Association's (AAA) full set of consumer rules. *See* Granata Decl. ¶ 9, Exh A at 6.3; *id.*, ¶ 10, Exh. B at 8.2. Rule 14(a) states, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections . . . to the arbitrability of any claim."[2] Where a contract incorporates a set of arbitration rules that themselves delegate arbitrability to the arbitrator, the parties have "clearly and unmistakably agreed to submit arbitrability issues to an arbitrator." *Belnap v. Iasis*

---

[1] The Court can consider the supplemental declaration, which is not barred as new evidence offered for the first time on reply as Edwards claims. *See* Opp. at 21 n.5. Additional information does not constitute new evidence where it rebuts arguments first raised by the opposing party. *See, e.g.*, *Vakas v. Transamerica Occidental Life Ins. Co.*, 242 F.R.D. 589, 593 (D. Kan. 2006) (denying motion to strike supplemental reply affidavit that was a "simply a beefed-up version of the [previous] affidavit [] and respond[ed] directly to issues raised by plaintiffs regarding the validity of the original [] affidavit" related to affiant's competence to provide original affidavit); *Stevens v. Water Dist. One of Johnson Cty.*, 561 F. Supp. 2d 1224, 1232 (D. Kan. 2008) (denying motion to strike supplemental reply affidavits that supported statements in original affidavits and responded to plaintiff's objections to original affidavits that affiants lacked personal knowledge; "Where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers – both briefs and affidavits – may properly address those issues") (internal citations omitted); *E.E.O.C. v. Creative Networks, LLC*, 2008 WL 5225807, at *2 (D. Ariz. Dec. 15, 2008); *Earth Island Inst. v. Nash*, 2020 WL 1936701, at *7 (E.D. Cal. Apr. 21, 2020). The Granata Supplemental Declaration provides clarification that directly rebuts Edwards's argument that Granata lacks foundation and did not connect his opinions to the evidence. Further, Edwards is wrong to suggest *Bennett v. Sprint Nextel Corp.*, 2013 WL 1197124 (D. Kan. Mar. 25, 2013), prevents the Court from considering the Supplemental Declaration. Unlike Coinbase, the *Bennett* plaintiffs submitted on reply a declaration from an entirely new expert, from whom they had not submitted evidence on their opening motion. *Id*. at *1. Moreover, that court *denied* defendants' motion to strike and instead gave them a sur-reply. *Id*. at *2. To the extent Edwards seeks a sur-reply to address the Supplemental Declaration, Coinbase would not oppose.

[2] The AAA Consumer Arbitration Rules are available at the following URL: https://www.adr.org/sites/default/files/Consumer%20Rules.pdf.

*Healthcare*, 844 F.3d 1272, 1284 (10th Cir. 2017); *see also, e.g.*, *Getzelman v. Trustwave Holdings, Inc.*, 2014 WL 3809736, at *3 (D. Colo. Aug. 1, 2014) (unpublished) (similar).

Edwards's response is to assert Coinbase has not submitted a version of the AAA consumer rules in place when Edwards signed the agreements. *See* Opp. at 23-24. But there is no need. The parties' agreements do not state the parties incorporate the AAA consumer rules "as they now exist," or "at this time," or any other language about a particular set of those rules. The agreements simply incorporate the AAA consumer rules, which indicates the parties did not have a specific set of those rules in mind – rather, the set in effect at the time of the dispute should control. Further, AAA itself instructs parties that "The AAA rules apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration [] received by the AAA."[3] Accordingly, the parties must use the AAA consumer rules as they now exist, which delegate arbitrability to the arbitrator.

### C. The Broad Arbitration Clause Covers Edwards's Claims.

If the Court considers whether Edwards's claims are arbitrable, it should find they are. The 2013 and 2014 User Agreements' arbitration provision is presumptively valid and enforceable under the Federal Arbitration Act (FAA).[4] *See* Mot. at 12. Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1146 (10th Cir. 2014). If an arbitration clause can be interpreted to apply to a dispute, arbitrability is presumed. *Id.* at 1147-1148.

---

[3] American Arbitration Association, "Rules, Forms, Fees," https://www.adr.org/ArchiveRules

[4] Edwards does not address in his Opposition, and so concedes, that the FAA, 9 U.S.C. § 2, governs the enforceability of the parties' arbitration clause. *See* Mot. at 6; *see generally* Opp. The FAA requires courts to "rigorously enforce arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotations omitted).

Further, the arbitration provision here is broad, as it requires arbitration of disputes "arising under" the agreements. *See* Granata Decl. ¶ 9, Exh A at 6.3; *id.*, ¶ 10, Exh. B at 8.2. Many courts have found that arbitration provisions applying to disputes "arising under" an agreement are broad. *See, e.g.*, *Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (an arbitration clause applying to "all disputes or controversies arising under or in connection with this Agreement" was "the very definition of a broad arbitration clause"); *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2nd Cir.2001). Edwards agrees with Coinbase that the arbitration clause is considered broad. *See* Opp. at 25.

Where an arbitration clause is broad, "even [] collateral matters" can be presumed to be arbitrable. *Sanchez*, 762 F.3d at 1146. Edwards's two negligence claims are not based on collateral matters, though, but on a dispute that arose under the parties' agreement, bringing the claims squarely within the arbitration provision's scope. *See* Granata Decl. ¶ 9, Exh. A at 6.3; *id.*, ¶ 10, Exh. B at 8.2. Edwards attempts to circumvent the breadth of the provision by arguing the Utah Supreme Court would extend an independent duty of care between Coinbase and Edwards. *See* Opp. at 26-27. But Edwards's cited cases concern the economic loss rule, not the interpretation of broad arbitration clauses, and he mistakes the appropriate analysis; the question turns not on which legal duties or causes of action apply, but on the factual allegations themselves and their connection to the agreement. *See, e.g.*, *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 383-384 (11th Cir. 1996) (an arbitration agreement covering claims "arising hereunder" encompassed both contract and tort; "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted."); *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir.1999) (tort-based claims "[arose] out of" an enforceable arbitration agreement and so were arbitrable despite

8

labels); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir.1993) ("[A] party may not avoid a contractual arbitration clause merely by 'casting its complaint in tort'"); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir.1999) (similar).

All the facts Edwards alleges relate to Coinbase's provision of services pursuant to the parties' agreement. That agreement specifically addresses the precise issues Edwards raises in his claims: password security, responsibility for it, and how Coinbase provides its services. *See* Granata Decl. ¶¶ 4, 7-10, Exh. A at preamble and § 1.5 ("Password Security … You are responsible for maintaining adequate security and control of any and all IDs, passwords, [] PINs, or any other codes that you use to access Coinbase services"). Edwards has characterized these claims as negligence rather than breach of contract, but the underlying facts are the same: Edwards contends Coinbase poorly performed its contractual obligation to provide him with a digital wallet service. *See, e.g.*, Compl. ¶¶ 1, 52-55 (Coinbase "fail[ed] to implement common sense security measures to prevent foreseeable fraud attacks [on Edwards's Coinbase account], which ultimately allowed a hacker to . . . steal millions of dollars of cryptocurrency from his Coinbase digital wallet."). Because Coinbase provided the digital wallet service to Edwards pursuant to the User Agreement, Edwards's claims that Coinbase did so carelessly must "arise under" that agreement. *See Gregory*, 83 F.3d at 385 (contract and tort claims should have been arbitrated because "every claim in this complaint targets the fact that the plaintiffs did not receive the amount of money that they thought they should have").

Further, even if the facts underlying Edwards's negligence claims were "collateral" to the User Agreements (they are not), the claims would be subject to arbitration. Where a collateral claim implicates "issues of contract construction or the parties' rights and obligations under it," it

9

falls under a broad arbitration provision. *Sanchez*, 762 F.3d at 1146 (internal citation omitted). As the negligence claims center on password security, responsibility for it, and Coinbase's services, they directly implicate the parties' rights and obligations under the User Agreement. Accordingly, even if considered collateral, the claims are arbitrable.

### D. Edwards's Claims Against Coinbase In This Court Should Be Stayed Pending The Completion Of Edwards's Individual Arbitration.

Edwards does not contest Coinbase's request for a stay of his claims, should the Court determine the parties should be sent to arbitration.

### III. CONCLUSION

For the foregoing reasons, the Court should: (1) compel Edwards to submit the arbitrability of his claims against Coinbase, or the claims themselves, to arbitration, and (2) stay those claims in this case pending completion of the arbitration. Further, to the extent the Court has further questions about the evidence in support of this motion, an evidentiary hearing may be appropriate. *See, e.g.*, *Mitchell v. Wells Fargo Bank*, 280 F. Supp. 3d 1261, 1272 (D. Utah 2017) ("If the court finds material factual disputes preclude it from determining the arbitration question as a matter of law, the court must proceed to a summary trial to resolve those disputes of fact."); *Greiner v. Credit Acceptance Corp.*, 2017 WL 586727, at *3 (D. Kan. Feb. 13, 2017) (noting an evidentiary hearing can be appropriate to determine "the issue of 'the making of an arbitration agreement.'"); *see also, e.g.*, *Spahr v. Secco*, 330 F.3d 1266, 1268 (10th Cir. 2003).

DATED this 27th day of September, 2021.

Respectfully submitted,

*/s/ Bree Hann*
Bree Hann
THE NORTON LAW FIRM PC
*Attorneys for Defendant Coinbase, Inc.*